AO 91 (Rev. 11/11) Criminal Complaint

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
OCT 27 2021
AT ___ O'CLOCK ___
John M. Domurad, Clerk - Albany

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

**UNITED STATES OF AMERICA**

**v.**

**CHRISTOPHER PENCE,**

**Defendant**

Case No. 1:21-MJ-511-DJS

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the dates of July 16 and August 9, 2021, in the county of Rensselaer in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1958(a) | Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

*Complainant's signature*

Brian M. DeCarr, FBI Special Agent

*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: October 27, 2021

*Judge's signature*

City and State: Albany, N.Y.

Hon. Daniel J. Stewart, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Brian M. DeCarr, being duly sworn, depose and state that:

**INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since January 2020. I am currently assigned to the Albany, New York Field Office. My current duty assignment is with the Capital District Safe Streets Task Force in Albany. In that assignment, I work with federal, state, and local law enforcement agents and officers in investigating criminal activities such as violent crime and transnational organized crime. Prior to my employment with the FBI, I was a New York State Trooper from May 2018 until January 2020, and was a Police Officer for the Pentagon Force Protection Agency from June 2017 until May 2018. I have participated in the execution of numerous warrants involving the search and seizure of financial records, computers, computer equipment, software, and electronically stored information.

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) — that is, an officer of the United States who is empowered by law to conduct investigations of offenses enumerated in Title 18, United States Code, Section 2516(1). Accordingly, I am authorized to seek criminal complaints for Title 18 criminal offenses, including offenses related to Title 18 U.S.C. § 1958(a) (Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire), which statute provides in pertinent part that:

> "Whoever... uses... any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of... anything of pecuniary value [is guilty of a crime]."

3. I make this affidavit from personal knowledge based on my participation in this investigation, including victim interviews, witness interviews and review of reports by myself and/or other law enforcement agents, communication with others who have personal knowledge of the events and circumstances described herein, records received in response to search warrants and grand jury subpoenas, and information gained through my training and experience.

4. The information outlined below is provided for the limited purpose of establishing probable cause for a criminal complaint, and does not contain all details or all facts known to me regarding this investigation.

## PROBABLE CAUSE

### Background

5. On September 2, 2021, the FBI Albany Field Office received information from the FBI Knoxville Field Office regarding information received from a confidential source that included communications purportedly retrieved from a Darknet website accessible via The Onion Router (TOR) network depicting a user of the website paying approximately $16,000 worth of the cryptocurrency Bitcoin in exchange for the killing of two individuals who reside in Hoosick Falls, New York.

### Confidential Source

6. The FBI confidential source, who is cooperating voluntarily and has received payments solely to offset incurred costs, has previously provided records of communications and payments received from an individual with access to the Darknet website, which subsequent FBI investigations confirmed depicted actual attempts to hire "hitmen" to kill real individuals using the same Darknet website.

Content of Communications over the Darknet Website

7. In this case, the retrieved communications, which occurred between July 16 and August 9, 2021, depict an anonymous user interacting on the Darknet website with another user and a site administrator to arrange the killing of the two above-referenced individuals in exchange for what was approximately $16,000 worth of Bitcoin. The anonymous user provided the site administrator with the names, address and photographs of the intended victims, as well as the manner in which the killing should take place. Specifically, the user advised that the killing should be made to look like an accident or botched robbery, and that, if possible, care should be taken to not harm any of the three children known to be in the case of the intended victims.

8. In the course of the Darknet website communications, the anonymous user is depicted transferring the requested approximately $16,000 worth of Bitcoin in a series of payments to the site administrator using various means, including a cryptocurrency wallet service, which advertises itself as means for shielding cryptocurrency transfers from financial surveillance of the cryptocurrency's blockchain.

The Bitcoin Transactions

9. The Bitcoin transactions depicted in the Darknet website communications provided certain information regarding the aforementioned wallet and other cryptocurrency exchanges being used for the transaction, such that the FBI National Cyber Investigative Joint Task Force (NCIJTF), was able to identify the cryptocurrency exchanges used to make the Bitcoin payments to the wallet which was used to make the payments to the Darknet website based on certain identifiers associated with the transactions.

10. An exigent request for information associated with the account was submitted to one of the cryptocurrency exchanges, which complied with the request, as well as a subsequent

grand jury subpoena, and was able to provide subscriber information for the account user, as well as a detailed record of the funds transferred in and out of the account and IP logins associated with the user's transactions.

Cryptocurrency Account Information

11. The subscriber information in the cryptocurrency exchange account identified CHRISTOPHER PENCE as the account holder (including his date of birth and social security number), along with additional user-provided information, including the address 2929 South 6500 West Cedar City, Utah 94720 (hereinafter, "PENCE's residence"), PENCE's email and cellular phone number, a linked bank account at the Boeing Employee Federal Union (BECU) in PENCE's name, and PENCE's Utah driver's license number. PENCE's identity was verified by the cryptocurrency exchange via the Utah driver's license which included a photograph of PENCE.

Analysis of IP Logins

12. Analysis of the IP addresses associated with the transactions conducted by the user of the cryptocurrency exchange account revealed that the IP address assigned to the user of the account for 66 out of the 67 transactions that logged the user's IP address was 70.34.15.207, which is an IP address assigned by the internet service provider InfoWest (headquartered at 435 East Tabernacle Street St. George, UT 84770). These logged transactions included three of the transactions that corresponded with the dates, times and amounts that deposited Bitcoin into the wallet that sent the payments to the Darknet website. Responsive records received from InfoWest in response to a grand jury subpoena revealed that the above IP addresses is static, and has been assigned exclusively to an account with PENCE as the subscriber and PENCE's residence as the location of the service. The service has been provided to PENCE's residence since November 2020, and is currently in effect.

13. The only other IP addresses associated with a logged transaction according to the cryptocurrency exchange's records – which happened to be a Bitcoin deposit – was an IP address that was assigned by Verizon Wireless. Responsive records received from Verizon Wireless in response to a grand jury subpoena revealed that the IP address in question was, and currently remains, assigned to an account whose subscriber is PENCE with PENCE's residence as the subscriber's residential address.

Information Provided by Intended Victims

14. On September 3, 2021, your affiant interviewed the intended victims. The interviews corroborated the information received from the confidential source and from the investigative work done by FBI to the extent that the intended victims matched the descriptions and photographs provided by the Darknet user, had the same number of children, and resided at the location described.

15. Additionally, the interviews revealed a motive for PENCE, specifically that, among other things, PENCE's family had legally adopted five of the intended victims' children, and that there was an escalating dispute between the two families such that the intended victims desired to regain custody of their children and were involved in the reporting of PENCE's family to local child welfare authorities, both of which reportedly angered PENCE. Furthermore, PENCE and the intended victims did not agree on how the children should be raised or the personal choices and lifestyle of the intended victims.

16. Furthermore, the intended victims recognized the photographs that the anonymous user of the Darknet provided to the Darknet website as part of the placement of the order for the killing of the intended victims, in that the photographs were reportedly the same as those provided

by the intended victims to PENCE and his family for use as a "baby book," with the intended victims' children, several of whom had been adopted by PENCE.

Interview of CHRISTOPHER PENCE

17. On October 27, 2021, investigators executed a federal search warrant on PENCE's residence in Cedar City, Utah, seeking to seize electronic devices and other evidence. While the warrant was being executed, investigators conducted a non-custodial, recorded interview with PENCE. In that interview, PENCE admitted *inter alia*: (1) that he was the user of the Darknet website depicted in the retrieved communications; (2) that he accessed the Darknet website using a computer connected to the Internet for the purpose of soliciting the killing of the intended victims; (3) that he used the photographs of the intended victims that he retrieved from the above-referenced "baby book," and (4) that he arranged the payment of approximately $16,000 in Bitcoin payments to the Darknet site via the above-referenced bank account, crypto currency exchange and wallet identified by the FBI.

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

18. Based on the foregoing, your affiant submits that there is probable cause to conclude that CHRISTOPHER PENCE violated Title § 1958(a) (Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire) from July 16 through August 9, 2021.

Attested to by the affiant,

Brian M. DeCarr
Special Agent
Federal Bureau of Investigation

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on October 27, 2021, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure:

Hon. Daniel J. Stewart
United States Magistrate Judge